UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF KENNY RICHIE MARTY MITCHEL,<br>  --By and through Emily Rebecca Garlick and<br>  Gerard Neville Mitchell,<br>  Its Personal Representatives | : | Case 3:19-CV-01914 |
| VS | : | |
| GAVIN SCOTT HAPGOOD, a/k/a<br>SCOTT HAPGOOD | : | June 23, 2020 |

## FORM 26(F) REPORT OF PARTIES' PLANNING MEETING

Date Complaint Filed: 12/4/19

Date Complaint Served: 12/9/19

Date Defendant's Answer and Counterclaims Filed and Served: 2/6/20

Date Answer to Counterclaims Filed and Served: To date no response has been filed; Defendant and Counter-claimant plans to seek default

Date of Defendant's Appearance: Michael Conroy – 1/27/20; Thomas Watson – 2/5/20 (motion for admission pro hac vice granted); Robert Mockler – 2/5/20 (motion for admission pro hac vice granted); James Noonan – 2/21/20; Charles Deluca-2/27/20; Beck Fineman – 3/4/20

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on May 15, 2020. The participants were:

> Steven Seligman for plaintiff and counter-defendant, Estate of Kenny Mitchel
>
> Thomas Watson, James Noonan, and Beck Fineman for defendant and counter-plaintiff, Gavin Scott Hapgood.

**I. Certification**

Undersigned counsel (after consultation with their clients) and any undersigned self-represented parties certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

1

**II. Jurisdiction**

**A. Subject Matter Jurisdiction:**

    **Plaintiff's position:**

        1) On April 13, 2019, the plaintiff's decedent, Kenny Richie Marty Mitchel ("Kenny Mitchel"), died a resident of Anguilla, British West Indies.

        2) On July 31, 2019 the Probate Court of the Supreme Court of Anguilla appointed Emily Rebecca Garlick and Gerard Neville Mitchell as the personal representatives of the Estate of Kenny Mitchel, and they bring the instant action in their capacity in behalf of the decedent's estate and in behalf of the decedent's minor child Mylie Melody Mislee Mitchel (Emily Garlick is the biological and custodial mother of the minor child, "Mylie").

        3) The defendant, Gavin Scott Hapgood ("Scott Hapgood," is a resident of Darien, Connecticut.

        4) This court has original jurisdiction of this civil action pursuant to 28 U.S.C.A. §1332(2), in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between the plaintiff estate, a citizen or subject of Anguilla, BWI, a foreign state, and the defendant, Gavin Scott Hapgood, a citizen of the State of Connecticut.

    **Defendant's position:** The defendant does not concede that this Court has subject matter jurisdiction and reserves the right to contest same upon receipt of additional information and discovery concerning the facts alleged in points 1 and 2 of plaintiff's position, including with respect to whether Mr. Michel was a citizen or resident of Anguilla and with respect to the Probate Court action discussed above. Nor does defendant concede that Emily Rebecca Garlick and Gerard Neville Mitchell are properly the estate's representatives or that they have standing.

**B. Personal Jurisdiction**:

    **Plaintiff's position:**

Defendant admits so much of paragraph 3 as alleges that he is a resident of Connecticut. The defendant was served with process (abode service by a Connecticut marshal) on December 9, 2019. Plaintiff contends that this court has personal jurisdiction over the defendant.

    **Defendant's position:** The defendant does not contest personal jurisdiction.

**III. Brief Description of Case:**

Plaintiff alleges the following: On April 13, 2019 at approximately 4:00pm the defendant, Hapgood, tortuously caused the death of Kenny Mitchel, at a resort known

as "Malliouhana" in Anguilla, British West Indies, a British dependent territory. Hapgood and his family were guests at the resort; Mitchel was employed there as a maintenance worker. Hapgood has stated publicly that Mitchel came to his hotel room under the pretense that he was there to repair a sink. Hapgood let him into the two bedroom/two bathroom suite, where his two daughters also were present, and moved from one bathroom to the other, at which time, Hapgood has claimed, Mitchel pulled a knife and demanded his money. An altercation ensued, which the plaintiff claims ended in Mitchel's death.

Hapgood denies plaintiff's version of events and alleges that his use of force was in self-defense and that he is not liable to the Mitchel estate. The defendant further denies that his altercation with Mitchel was the cause of Mitchel's death, the cause of which was, instead, due to an overdose of cocaine, marijuana and/or alcohol and intervening and superseding acts of others.

Hapgood counterclaims against Mitchel's estate for injuries caused by Mitchel's negligence and his assault and battery against the defendant as set out in detail in the counterclaims. Hapgood also has brought an action against Auberge Resorts, LLC, the apparent owner/operator of Malliouhana in the Superior Court for Marin County California.

Plaintiff contends that this action is brought pursuant to Anguilla's "Fatal Accidents Act," which is its remedy for wrongful death.

Following Mitchel's death, Hapgood was charged with manslaughter and released on bond. Under Anguillian law, should the prosecution decide that it has a sustainable case, it is obliged to bring a "preliminary inquiry ("PI")", at which the prosecution—"the Crown"—bears the burden of establishing to the magistrate that there is "sufficient evidence" to "bind over" the accused for trial in the High Court. The PI as a matter of practice is closed but Defendant contests any PI being closed. A unique aspect of this procedure is that the defendant and his counsel have a right to appear and question witnesses, but no right to call witnesses or submit evidence.

Plaintiff appends <u>Commissioner of Police and His Honour, Magistrate Keithly Benjamin</u>, Claim No. AXAHCV 2019/0052 (Innocent, J), which plaintiff contends sets forth the chronology following Hapgood's April 18, 2019 release on bail. Plaintiff contends that the posture of the criminal case in Anguilla, unfortunately, drives the schedule proposed herein by the parties pursuant to F.R.Civ Pro 26f. Defendant objects to Plaintiff's submitting this document in connection herewith, among other reasons, because it is not relevant to this Statement.

For purposes of this case, the parties note that the PI has not yet concluded.

3

In the meantime, Hapgood commenced an action before the courts of the Eastern Caribbean Supreme Court asserting that he and his counsel were not served by the Prosecution, in contempt of Judge Innocent's order, with notice of the matter whether the PI should be resumed, and therefore was precluded from participating in the Anguillian proceedings. In these circumstances, he was not provided with any opportunity to present evidence as to the substantial harm to his person which he apprehended due to threats received from certain members of the Anguillian public, and which left him in fear to make attendance at the PI.

The Eastern Caribbean Supreme Court, in a sitting before a Single Judge, did make a finding that the Prosecution was in contempt for failure to serve, but declined to give an order of stay to affect a correction. This decision was then appealed by Hapgood to a three-judge panel of the same court, which action remains to be heard, on 22 May 2020. Upon information and belief, the Magistrate scheduled the resumption of the PI for April 20, 2020. Prior to that date, however, the courts of the Eastern Caribbean Supreme Court, of which Anguilla is a member, shut down in response to the Coronavirus/Covid 19 pandemic. The date on which the PI will resume is unknown and unpredictable because the Crown has given an undertaking not to reschedule the PI pending outcome of the appeal. All parties agree that it will be at least months.

The pendency of the PI is important to the instant matter in that, it is the understanding of all parties, all evidence adduced at the PI is sealed and shall remain so until and unless there is a Magistrate's finding of "sufficient evidence." Additionally, Anguilla's Attorney General, ultimately responsible for the prosecution of Hapgood, has exercised his powers under Anguilla law to issue a gag order, whose applicability includes all law enforcement officers .

Under the present circumstances, plaintiff contends that meaningful discovery—at least of Anguillian witnesses—is impossible.

**A. Claims of Plaintiff/s**:

The plaintiff estate seeks damages for the wrongful death of its decedent, Kenny Mitchel, who was 27 years old at the time of his death. The Fatal Accidents Act, pursuant to which the plaintiff proceeds, provides that damages recovered shall be, in part, for the benefit of a spouse and/or surviving minor child. Kenny Mitchel was the biological father of "Mylie Mitchel," whose mother (to whom Mitchel was not married), Emily Garlick, is—along with Mr. Mitchel's father, Neville Mitchell (the father's name has 2 "l's"; the son's only one)—the personal representative of the plaintiff estate.

**B. Defenses and Claims (Affirmative Defenses, Counterclaims, Third Party Claims, Cross Claims)(either pled or anticipated) of Defendant/s:**

4

The defendant denies that defendant committed any wrongful or tortious conduct and moreover that any conduct by defendant resulted in Mitchel's death. The defendant maintains that his actions were in defense of himself and his minor children present at the time Mitchel assaulted the defendant and inflicted bodily injury upon him. The defendant has asserted affirmative defenses, including that Mitchel's death was the result of his own conduct and/or intervening causes and that the defendant responded to Mitchel's unlawful assault and battery with reasonable force necessary to protect himself and his children.

Further, the defendant asserts counterclaims against Mitchel's estate for injuries caused by Mitchel's negligence and his assault and battery against the defendant. In connection with his counterclaims, the defendant seeks compensatory damages, punitive damages, and other relief.

C. Defenses and Claims of Third-Party Defendant/s: None in this case; Hapgood has brought an action in the California Superior Court against Auberge, the owner of Malliouhana.

**IV. Statement of Undisputed Facts**

Based upon the defendant's answer to the complaint, virtually everything material claim of the parties, presently, is controverted. Counsel are aware of their duty and hope/expect that, as this case unfolds, they will be able to arrive at some conclusions regarding undisputed facts.

**V. Case Management Plan**:

**A. Initial Disclosures _:**

--**A) Plaintiff's position**:

The plaintiff would like to serve initial disclosures upon defendant as soon as is permissible.

--**B) Defendant's position:**

The defendant anticipates serving his initial disclosures on or before July 20, 2020.

**B. Scheduling Conference**

1. The parties do **not request** to be excused from holding a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b), subject to their desire to have a settlement conference; see below "C."

2. The parties prefer that a scheduling conference, if held, be **conducted by telephone or videoconference, particularly given that certain counsel for Defendant are based in Los Angeles**.

### C. Early Settlement Conference

1. The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement **may be facilitated by use of the following procedure**: *an early settlement conference with a magistrate judge.*

2. The parties **request** an early settlement conference.

3. The parties prefer a settlement conference, when such a conference is held, with **a magistrate judge**.

4. The parties do **not** request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

### D. Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings

    **A)**    **Plaintiff's position:** At this time, the plaintiff does not contemplate amending the complaint.

    **B)**    **Defendant's position:** At this time, the defendant does not intend to seek joinder of any additional parties and has already responded to the complaint. To date, plaintiff has not answered defendant's counterclaims, and defendant plans to take a default.

### E. Discovery

a. Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case" :

    --**Plaintiff's Position**: so long as the criminal preliminary inquiry on Anguilla remains unresolved, the parties will be denied access to evidence and witnesses. Although the parties should be permitted to serve initial "paper" discovery on one another, significant discovery must necessarily be delayed.

**--Defendant's Position (if different)**: The defendant does not object to plaintiff's position and recognizes that significant aspects of discovery will need to be delayed due to Covid and the fact that numerous witnesses are located outside of the United States. Plaintiffs do believe that initial written and party discovery can proceed.

b. The parties anticipate that discovery will be needed on the following subjects:

**--Plaintiff's position:**

Kenny Mitchel went to Scott Hapgood's suite (rooms 48 and 49) at the Malliouhana Hotel on Saturday, April 13, 2019 at approximately 4:00pm. Discovery will be needed to determine why and under what circumstances. It appears that, once there, a physical struggle ensued—what precipitated the struggle is unknown and must be the subject of discovery. According to public accounts (all evidence presented to the magistrate's court during the incomplete and adjourned Preliminary Inquiry is under seal), Malliouhana employees, members of the Royal Anguillian Police Force, emergency medical technicians allegedly saw Hapgood on top of Mitchel and pressing his arm against Mitchel's throat/neck. Whether this is true and whether such conduct was tortious or legally justified will be a subject of discovery. There have been public pronouncements that the cause of Mitchel's death was, inter alia, asphyxia. Likewise, there have been public pronouncements that Mitchel had greatly elevated levels of drugs and alcohol in his system that contributed to/caused his death. Apparently, forensic pathologists with access to the evidence have rendered different opinions on what caused Mitchel's death. This will be a subject of discovery.

Hapgood has counterclaimed against Mitchel, and all elements of his claim will likewise be the subject of discovery.

Mitchel seeks all remedies permitted by Anguilla's Fatal Accident Acts, which includes damages for his minor child.

**--Defendant's position:** Discovery must be conducted to determine why Mitchel was present at the resort and at the Hapgood's suite at the time of the subject incident, what Mitchel's intentions were, the nature of his conduct that led to the altercation, the attack by Mitchel, the actions of the Malliouhana and hotel employees, the actions of the emergency responders and the hospital, the police, the cause of his death, and the alleged damages.

c. Due to the pendency of the criminal proceedings and the resulting unavailability of evidence necessary for the plaintiff to prosecute this case and for the defendant to prepare his defenses, the parties agree that meaningful written discovery cannot be completed until the Anguillian PI has concluded, and that All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced

by [date] and completed (not propounded) by [date]. d. Discovery [will] [will not] be conducted in phases.

e. Discovery will not be conducted in phases.

    The parties agree that, based on presently available information, depositions cannot commence until substantial completion of written and third-party document discovery. Accordingly, the parties jointly request that the "start" date for this discovery be the subject of a scheduling/settlement conference.

f. The parties anticipate that the plaintiff(s) will require a total of \_\_\_\_ depositions of fact witnesses and that the defendant(s) will require a total of \_\_\_\_ depositions of fact witnesses. The depositions will commence by [date] and be completed by [date].

    **--Plaintiff's position**: the preliminary inquiry has already taken five full days of evidence, and—according to public comments—the Crown had anticipated at least another 5 days of evidence in order to complete that hearing. From this plaintiff assumes that there are many witnesses (whose names are largely unknown to the plaintiff). Given that the witnesses are largely (although not exclusively) in Anguilla, depositions will be required for discovery and for use in lieu of live testimony in the trial of this matter. Plaintiff "guesses" that at least 25 depositions will be required.

    Commencement date of these depositions should be the subject of a scheduling/status conference to be held.

    **--Defendant's position**:   Defendant objects to plaintiff's description of the PI and does not know the basis for plaintiff's statements about the evidence to be introduced at the hearing or the length thereof.

    Based on the limited information currently available, the defendant estimates that he will require approximately 15-20 fact witness depositions.

g. The parties will request permission to serve more than 25 interrogatories.

h. Plaintiff intends to call expert witnesses at trial. Defendant intends to call expert witnesses at trial.

i, j. As to the timing of the parties' respective designations of trial experts and disclosures of reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2), the parties request permission to establish a deadline for such disclosures, to be no later than 3 months before the deadline for completing all discovery with respect to experts

relating to any issues on which the disclosing party bears the burden of proof, and no later than one month before the deadline for completing all discovery with respect to experts relating to issues on which the disclosing party does not bear the burden of proof, once the "start" date for discovery has been established in conference with this Court.

k. As to damages analyses, given the uncertainties described above, the parties request that this deadline be the subject of a status/scheduling conference after the conclusion of the Anguillian preliminary inquiry.

l. Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) and self-represented parties have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. [The parties agree to the following procedures for the preservation, disclosure and management of electronically stored information [OR the parties have been unable to reach agreement on the procedures for the preservation, disclosure and management of electronically stored information. Following is the position of each party:] [SPECIFY].

 **--Plaintiff's position**: plaintiff believes that its case involves none of the above

 **--Defendant's position**:   The defendant requests that the plaintiff preserve, in unedited form and in a format that can be made accessible to the defendant, any electronically stored information now or ever in its possession relating in any way to: (1) Mitchel's mental health, substance abuse, or criminal history; (2) Mitchel's employment history; (3) Mitchel's immigration and work status in Anguilla,(4) evidence regarding Mitchel's alleged rape of Emily Garlick, including the complaint made to the police and all information about it, (5) the events described in the plaintiff's complaint and defendant's answer and counterclaims. The defendant further requests that the plaintiff take all necessary steps to preserve, without alteration, Mitchel's social media accounts, Mitchel's mobile phone data, Mitchel's text messages on any platform, and Mitchel's emails.

m. Undersigned counsel (after consultation with their clients) and self-represented parties have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. The parties agree to the following procedures for the preservation, disclosure and management of such information [OR: The parties have been unable to reach agreement on the procedures for the preservation, disclosure and management of such information. Following is the position of each party]: [SPECIFY].

 **--Plaintiff's position**: plaintiff believes that its case involves none of the above

 **--Defendant's position**: The defendant requests that the plaintiff preserve, in their entirety, any non-electronic records now or ever in its possession relating in any way to: (1) Mitchel's mental health, substance abuse, or criminal history; (2) Mitchel's employment history; (3) Mitchel's immigration and work status in Anguilla, (4) evidence regarding Mitchel's alleged rape of Emily Garlick, including the complaint made to the police and all information about it, or (5) the events described in the plaintiff's complaint and defendant's answer and counterclaims. The defendant further requests that the plaintiff take all necessary steps to preserve, without alteration, Mitchel's social media accounts, Mitchel's mobile phone data, Mitchel's text messages on any platform, and Mitchel's emails.

n. Undersigned counsel and self-represented parties have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production: If electronically stored information is produced in discovery and is subject to a claim of privilege or protection as trial preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly sequester the information and any copies it has and may not use or disclose the information until the claim is resolved. If the receiving party does not dispute the producing parties' claim of privilege or work product, the receiving party shall promptly return the information or destroy it. If the receiving party disputes the privilege or work product claim, it may promptly present the information to the Court under seal for a determination of the claim, or the receiving party may inform the producing party in writing that it disputes the claim. The producing party may then promptly move the Court for an Order to return the electronically stored information. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

G. Summary Judgment Motions:

Summary judgment motions, which must comply with Local Rule 56, will be filed on or before [date].

    **--Plaintiff's position**: plaintiff does not contemplate filing any MSJ

    **--Defendant's position**: The defendant does contemplate filing a summary judgment motion and requests permission to establish a deadline in conference with this Court.

H. Joint Trial Memorandum

The parties submit that a deadline for submission of the Joint Trial Memorandum cannot be determined at this time in light of the issues discussed above.

VI. TRIAL READINESS The case will be ready for trial by [date].

The parties submit that a trial ready date cannot be determined at this time in light of the issues discussed above.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Plaintiff

By _____/s/ct06163_____     Date: _____6/23/20_____
    Steven L. Seligman


Defendant

By _____/s/ct27648_____     Date: _____6/23/20_____
    Beck S. Fineman

James J. Noonan

Michael Conroy

Thomas Watson

Robert Mockler

Counter-Claimant

By _____/s/ct22254_____     Date: _____6/23/20_____

Michael Conroy

Thomas Watson

Robert Mockler